UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

MELVIN BROWN,

    Petitioner,

vs.

JAMES WALSH,[1] Superintendent, Sullivan
Correctional Facility,

    Respondent.

No. 9:06-cv-01130-JKS

MEMORANDUM DECISION

Melvin Brown, a state prisoner proceeding *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254.  Brown is currently in the custody of the New York Department of Correctional Services, incarcerated at the Sullivan Correctional Facility.  Respondent has answered, the petition and Brown has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial, Brown was convicted in the Albany County Court of one count each of Rape in the First Degree (N.Y. Penal Law § 130.35(1)), Burglary in the First Degree (N.Y. Penal Law § 140.30(2)), Assault in the Second Degree (N.Y. Penal Law § 120.05(1)), and Unlawful Imprisonment in the First Degree (N.Y. Penal Law § 135.10).  The trial court sentenced Brown to an aggregate determinant term of 24½ years' imprisonment.  Brown timely appealed his conviction to the Appellate Division, Third Department, which affirmed his conviction, and the New York Court of Appeals denied leave to appeal on January 6, 2006.[2]  On March 20, 2006, Brown filed a motion under N.Y. Criminal Procedure Law § 440.10 in the Albany County Supreme Court, which was denied in an unpublished reasoned decision, and the

---

[1] James Walsh, Superintendent, Sullivan Correctional Facility, is substituted for Thomas Poole, Superintendent, Five Points Correctional Facility.  Fed. R. Civ. P. 25(d).

[2] *People v. Brown*, 805 N.Y.S.2d 171 (N.Y. App. Div. 2005), *lv. denied*, 844 N.E.2d 796 (N.Y. 2006) (Table).

Appellate Division, Third Department, denied leave to appeal in an unpublished decision on August 8, 2006.  Brown timely filed his petition for relief in this Court on September 15, 2006.  Subsequent to filing his petition in this Court, Brown filed a motion in the Appellate Division seeking reconsideration of its decision affirming his conviction.  The Appellate Division summarily denied Brown's motion without opinion or citation to authority in an unpublished decision.

## II.  GROUNDS RAISED/DEFENSES

In his petition Brown raises eight grounds:  (1) an improper coercive *Allen* charge given to the jury;[3] (2) trial court erred in making *Sandoval*/*Molineux*/*Ventimiglia* rulings;[4] (3) improper compelled disclosure of inculpatory and prejudicial evidence; (4) prosecutorial misconduct; (5) denial of challenge to jury panel without a hearing; (6) verdict against the weight of the evidence; (7) insufficiency of the evidence; and (8) sentence was harsh and severe.[5]  Respondent contends the first ground is procedurally barred, and the second, fourth, fifth, sixth, and seventh grounds are unexhausted.  Respondent raises no other affirmative defenses.[6]

## III.  STANDARD OF REVIEW

Because the petition was filed after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

---

[3] *Allen v. United States*, 164 U.S. 492 (1896) (charge given to a jury that urges jurors to continue deliberations in order to reach a verdict when the jury reports difficulty in reaching a verdict).

[4] *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974); *People v. Ventimiglia*, 420 N.E.2d 59 (N.Y. 1981); *People v. Molineux*, 61 N.E. 286 (N.Y. 1901).  A short-hand reference to the New York procedure for determining in advance whether evidence of prior crimes is admissible for impeachment purposes in the event the defendant testifies (*Sandoval*), or prior crimes/uncharged criminal conduct is probative for the purpose of showing, *e.g.*, (1) motive, (2) intent, (3) absence of mistake or accident, (4) common scheme or plan, or (5) identity, and whether that probative value outweighs the prejudicial effect (*Ventimiglia/Molineux*).

[5] In his traverse Brown raises a ninth claim:  denial of effective assistance of counsel.  Although raised in the state court in his § 440.10 motion, this claim was not raised in his petition and is not properly before this Court.  *See* Rules—Section 2254 Cases, Rule 2(c) (the petition must specify all the grounds for relief available to the petitioner and the facts supporting each ground); *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005).  Consequently, the Court declines to address this claim.

[6] Rules—Section 2254 Cases, Rule 5(b).

U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the decision of the  state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[7]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[8]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[9]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[10]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[11]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[12]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and

---

[7] 28 U.S.C. § 2254(d)(2); *see Williams v. Taylor*, 529 U.S. 362, 386 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[8] *Williams*, 529 U.S. at 412.

[9] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[10] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, ___, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[11] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[12] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

injurious effect or influence in determining the jury's verdict.[13]  Brown "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[14]

In applying this standard, this Court reviews the last reasoned decision by the state court.[15]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[16]

If a federal claim has not been adjudicated on the merits, AEDPA deference is not required.[17]  In that situation, conclusions of law and mixed questions of fact and conclusions of law are reviewed *de novo*.[18]  Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it.[19]  In so doing, because it is not clear that it did not do so, the Court assumes that the state court decided the claim on the merits and the decision rested on federal grounds.[20]  This Court gives the assumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[21]

---

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[14] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citations omitted).

[15] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[16] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[17] *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).

[18] *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005).

[19] *See Dolphy v. Mantello*, 552 F.3d 236, 239–40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530–31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

[20] *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris–Coleman* interplay); *see also Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810–11 (2d Cir. 2000) (same).

[21] *Jimenez*, 458 F.3d at 145–46.

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[22]  A federal court must accept that state courts correctly applied state laws.[23]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[24]  A federal court may not issue a habeas writ based upon a perceived error of state law unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[25]

IV.  DISCUSSION

A.  **State of the Pleadings**.

The Court initially notes that the petition states the grounds raised in almost entirely conclusory terms without any factual statement in support of the grounds.  In his traverse Brown does provide some factual support for his first (*Allen* charge), second (*Sandoval/Molineux/-Ventimiglia* rulings), and fourth (prosecutorial misconduct) grounds.  The petition must specify all the grounds for relief available to the petitioner and the facts supporting each ground.[26]  If it plainly appears on the face of the petition that petitioner is not entitled to relief, a district court must dismiss the petition.[27]  The district court may dismiss on this basis *sua sponte* after initial screening and an answer has been ordered and filed.[28]  As the Supreme Court has stated:

> Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts

---

[22] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[23] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[24] *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

[25] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[26] Rules—Section 2254 Cases, Rule 2(c).

[27] Rules—Section 2254 Cases, Rule 4.

[28] *See Day v. McDonough*, 547 U.S. 198, 207–09 (2006).

supporting each ground." See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important ... ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)). Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:

> **"<u>CAUTION</u>: You must include in this petition <u>all</u> the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date."** Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).

A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted." § 2243. Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court," the court must summarily dismiss the petition without ordering a responsive pleading. If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5(b).[29]

The fact that the petition is substantially deficient notwithstanding, rather than dismiss the unsupported grounds this Court will look to the arguments made before the Appellate Division on his third (compelled disclosure of inculpatory evidence), fifth (denial of hearing on challenge to jury panel), sixth (weight of the evidence), seventh (sufficiency of the evidence), and eighth (harsh and serve sentence) grounds, and assume that Brown has incorporated those arguments in his petition to this Court.

B. **Facts**.

The facts of the crime, as recited by the Appellate Division:

Defendant lived at the victim's apartment in the City of Albany until December 2002 when, following a fight, she directed him to leave her home. Defendant

---

[29] *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005).

exited, but returned later that night.  When the victim reportedly refused to permit him to enter her apartment, defendant kicked in two locked doors to gain entry.  Once inside, defendant allegedly repeatedly punched, slapped and kicked the victim, forced her to have sexual intercourse with him, and then prevented her from leaving under threat of death.  She escaped the next morning, fleeing while partially attired onto the street.  Police were summoned and she was transported to the hospital.[30]

C.  **Grounds Raised**.

Ground 1:  *Allen* Charges.

Brown contends that he was prejudiced by a reason of improper and coercive *Allen* charges.  The Appellate Division tersely rejected Brown's argument:

Defendant's further assertions do not require extended discussion.  While defendant argues that the two *Allen* charges were improper, the issue was not preserved by an objection at trial (citation omitted) and, in any event, our review of the two charges does not reveal reversible error.[31]

Respondent contends that consideration of this ground is procedurally barred.  The Court agrees.  Under the adequate-and-independent-state-ground doctrine, federal courts may not review the judgment of a state court that "rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision."[32]  Because this doctrine applies on federal habeas review and because the state-law ground may be a procedural bar,[33] federal habeas courts often speak of an "adequate and independent procedural bar" to federal review of a claim or simply of a "procedurally barred" federal claim.  A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment "rests on a state law ground that is independent of the federal question and adequate to support the judgment."[34]  Where a decision "fairly appear[s] to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence

---

[30] *Brown*, 805 N.Y.S.2d at172–73.

[31] *Id*. at 174.

[32] *Harris,* 489 U.S. at 260.

[33] *Id.* at 261–62.

[34] *Coleman,* 501 U.S. at 729.

of any possible state law ground is not clear from the face of the opinion," habeas courts presume that there is no adequate and independent state law ground supporting the judgment.[35]  Finally, "[s]tate courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims."[36]  Accordingly, a procedural bar is deemed "adequate" only if it is based on a rule that is "firmly established and regularly followed" by the state in question.[37]

The Second Circuit has laid out three clues to follow to classify the decision as either fairly appearing to rest primarily on or interwoven with federal law, or as resting primarily on state procedural law:  (1) the face of the state court opinion; (2) whether the state court was aware of a procedural bar; and (3) the practice of state courts in similar circumstances.[38]  There is no question that the Appellate Division explicitly invoked the state procedural rule as barring review.  New York's contemporaneous objection rule to preserve appellate review, New York Criminal Procedure Law § 470.05(2), is an adequate and independent state procedural rule precluding review.[39]

Even if the Court were to reach the issue on the merits, Brown would not prevail.  Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it.[40]  In so doing, because it is not clear that it did not do so, the Court assumes that the state court decided the claim on the merits and the decision

---

[35] *Id.* at 735.

[36] *Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982).

[37] *Ford v. Georgia,* 498 U.S. 411, 423–24 (1991).

[38] *Jimenez*, 458 F.3d at 145 and n.16.

[39] *See Garcia v. Lewis*, 188 F.3d 71, 78–79 (2d Cir. 1999).

[40] *See Dolphy v. Mantello*, 552 F.3d 236, 239–40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530–31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

rested on federal grounds.[41]  This Court gives the assumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[42]

First *Allen* charge:

So I am going to go ahead and give the jury the charge that is always given to the jurors who are having difficulty reaching the verdicts on any or all or some or at least one of the charges.

During the final charge to the jury I did give a five-part charge concerning your duty and responsibility to deliberate together as a group in order to arrive at your final verdict or verdicts.

First of all, I state the obvious.  That in order to return a verdict, each juror must agree to such a verdict.  That is each and every one of your verdicts must be unanimous.

We told you during jury selection that 12 jurors seldom agree immediately and you, therefore, have a duty to deliberate.  And the duty to deliberate, of course, is to consult with one another and to deliberate with a view to reaching a unanimous agreement, if it can be done without compromise or violence to individual judgment.

That each juror must decide the case for himself or herself, but only after an impartial consideration of the evidence with his or her fellow jurors.

That no juror should surrender his or her honest belief or conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors or for the mere purpose of returning the verdict.

And fifth, and finally, and probably in this situation most importantly, in the course of your jury deliberations a juror should not hesitate to reexamine his or her own views and to change his or her opinion if otherwise unconvinced by the evidence and/or by the reasons or arguments advanced by others.

I point out to you that you have been impaneled for a very simple but very important purpose, and that is to sit as judges of the facts in a criminal case involving another person.  That you are not partisans.  You are not advocates. You are judges, judges of the facts.  And your sole interest as jurors is to attempt to ascertain the truth from the evidence in the case.

---

[41] *Harris*, 489 U.S. at 263; *Coleman*, 501 U.S. at 740; *see Jimenez*, 458 F.3d at 140 (explaining the *Harris–Coleman* interplay); *see also Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810–11 (2d Cir. 2000) (same).

[42] *Jimenez*, 458 F.3d at 145–46.

The second *Allen* charge was, as the trial court noted, a mixture of the *Allen* charge, ad libbing, and urging the jury to continue working.  The trial court gave an abbreviated *Allen* charge.

> But I do remind you that relative to deliberations, your duty to consult with one another and to deliberate with a view to reaching a verdict is still in as much force and effect as it ever was.  That it is not deliberating to say that "The only way we are going to have a verdict is if you change your mind," to another juror, "because I won't.  No matter what you tell me, I'm through listening."  That's really not deliberations.

> After you make your own decision, you are to do it only after an impartial consideration of the evidence with his or her fellow jurors.  That, of course, you are not to change your opinion merely because of the opinion of your other jurors or for the mere purpose of returning the verdict.

> But in this situation, finally and most importantly, in the course of jury deliberations - - frankly, this most often happens after readbacks or repeats of charges relative to credibility or beyond a reasonable doubt or elements of a crime.  You know it sort of gives people a reason.  That they heard something that they didn't realize before.  Based on everything you, heard, that that's a reason for a juror to reexamine his or her own views and to change his or her opinion if otherwise unconvinced by the evidence or the law and/or by the reasons or arguments advanced by others.

It has long been the law that it is not error to charge the jury, on their return for further instructions, that it is their duty to decide the case, if they can conscientiously do so; that they should listen to each other's arguments with a disposition to be convinced; that, if a majority are for conviction, a dissenting juror should consider whether his doubt is a reasonable one; and that, if a majority is for acquittal, the minority should consider whether they may not reasonably doubt their judgment.[43]  The propriety of an *Allen* charge must be evaluated "in its context and under all the circumstances."[44]  This, however, "does not demand a formulary statement that the trial court's actions and inactions were noncoercive, individually and collectively."[45]  "[W]hen an *Allen* charge directs jurors to consider the views of other jurors, specific cautionary language

---

[43] *Allen*, 164 U.S. at 501.

[44] *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988) (internal quotation marks omitted).

[45] *Packer*, 537 U.S. at 9 (internal quotation marks omitted).

reminding jurors not to abandon their own conscientious beliefs is generally required."[46]  In federal courts, the trial court's decision to give an *Allen* instruction is reviewed under an abuse of discretion standard.[47]

Brown argues in particular that the *Allen* charges were directed at certain jurors, not the jury as a whole, *i.e.*, that it singled out the jurors who were not agreeing with their fellow jurors. The logic of this argument is not apparent.  First, if there were no disagreement, no *Allen* charge would be required.  Second, a disagreement involves at least two sides.  Nothing in the *Allen* charge given to the jury in this case could be construed as coercing the holder of one view or the other to surrender that view.  Nor can it be said that it singles out the "closed mind" juror, except the juror who is so closed-minded that the juror refuses to deliberate.  Contrary to Brown's position, the first *Allen* charge specifically admonished jurors not to surrender their own conscientiously held beliefs.[48]  While the second partial *Allen* charge did not include the "magic words," it did impart to the jurors a reminder that they were not to change their opinions merely because of the opinion of other jurors, or to reach a verdict.

Thus, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[49]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro*, *i.e.*, the state court's decision was more than incorrect or erroneous; its application of clearly established law was objectively unreasonable.[50]  Brown is not entitled to relief under his first ground.

---

[46] *Spears*, 459 F.2d at 205.

[47] *United States v. Crispo*, 306 F.3d 71, 77 (2d Cir. 2002).

[48] A jury is presumed to have followed its instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

[49] 28 U.S.C. § 2254(d).

[50] *Wiggins*, 539 U.S. at 520–21.

Ground 2:  *Sandoval*/*Molineux*/*Ventimiglia* Rulings.

Brown argues that the trial court erred in allowing the testimony of his prior convictions and other bad acts to be admitted.  The trial court allowed evidence of six prior convictions to be entered into evidence to impeach Brown's credibility.[51]   The trial court also allowed into evidence certain incidents involving Brown and the victim preceding the acts for which he was being tried.  Specifically, two prior convictions for assault on the victim and the protection order that had been issued in favor of the victim; and two prior incidents in which Brown allegedly assaulted the victim that occurred in March and July, several months prior to the December acts underlying the charges upon which Brown was being tried.  The trial court gave specific limiting instructions that the jury was not to use such evidence as any proof that Brown committed any of the crimes with which he was charged—during the prosecutor's opening statement, during trial, and in the final instructions.[52]  This Court must assume, in the absence of evidence to the

_____

[51] Brown testified at trial, and it does not appear that Brown challenged the admissibility of those convictions on direct appeal.

[52] The instructions given were as follows:
Instruction during People's opening statement.
>    At this point I am going to give the jury a cautionary instruction.  You have heard in the People's opening, which is not evidence, that the People in their case in chief are going to introduce some evidence of what would broadly call misconduct not charged.  That it is not received in evidence to prove that the defendant has any propensity or disposition to commit the crimes charged in the indictment, it will not be offered for any such purpose, and it must not be considered by you for that purpose.

Second limiting instruction given during direct examination of the victim.
>    I have just allowed the People to introduce into evidence that upon another prior occasion or occasions this defendant committed or allegedly committed other anti-social, wrong, criminal or bad acts.  And, of course, I'm referring to the alleged assault in March 2002 and the assault in July of 2002.  And I say alleged as to one and assault as to the other because there was a conviction for Assault Third when the order of protection was made.  I now tell you that the fact that the defendant committed or allegedly committed another crime or other anti-social or bad acts is no proof whatsoever that he possessed a propensity or disposition to commit the crime or crimes charged in the indictment or any other crime.  It was not offered or received in evidence for such purpose and must not be considered by you for that purpose.

>    Instead the People are allowed to offer evidence of such prior bad or criminal behavior on the part of the defendant solely upon the issue of the defendant's alleged mental culpability on December 14, 2002, as some evidence on the issue as to what, if any, intent the defendant had, as some evidence on the issue as to what, if any, motive the defendant had, and also as evidence of
>                                                                                                    (continued...)

contrary, that the jury followed those instructions.[53]  Brown argues that the prejudicial effect of

the prior acts, particularly those similar to the charged acts, outweighed any probative value they

might have as to permissible purposes.  The Appellate Division rejected Brown's arguments,

holding:

> With regard to Supreme Court's ruling following the *Sandoval/Ventimiglia*
> hearing, the limited use permitted of defendant's extensive criminal history
> (including allowing evidence of his prior recent abusive conduct toward the
> victim) was, under the circumstances of this case, consistent with prevailing
> precedent (citations omitted).[54]

---

[52](...continued)
knowledge that there was an order of protection against him.  And on those issues, motive, intent,
and knowledge, solely as contentions of the People or the prosecution.

It was also received in evidence as inextricably intertwined background information
regarding the relationship between the alleged victim and the defendant, Melvin Brown.

I charge you that such evidence may be considered by you only for such limited purpose
or purposes and for none other.  The fact that I allowed you to hear the evidence should not be
considered by you that the Court has any opinion one way or the other as to its value to prove
such purpose or purposes.

The sufficiency of such evidence to prove the purpose or purposes for which it was
offered by the People is solely a question for the jury.  If you find it insufficient and of no value,
then simply disregard it and forget that you ever heard it.  If you find it sufficiently probative of
such purpose or purposes, you may give the evidence such weight as you believe the evidence
deserves.

It will then be your duty to consider such evidence, together with all of the other
evidence in the case, in deciding whether or nor the people have proven the defendant guilty
beyond a reasonable doubt of the crimes charged in the indictment.

Instruction given at the close of the case.
You will also recall that the defendant, who took the witness stand in his own behalf, has
previously been convicted of a crime or crimes and has committed previously wrong or bad acts.  I now
charge and I emphasize that under no circumstances are you to consider the fact that the defendant has
previously been convicted of a crime or has committed wrong or illegal acts as any proof that he
committed any of the crimes with which he is charged in this indictment.

[53] *See Weeks*, 528 U.S. at 234; *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the
"almost invariable assumption of the law that jurors follow their instructions"); *Francis v. Franklin*, 471
U.S. 307, 324 n.9 (1985).

[54] *Brown*, 805 N.Y.S.2d at 174.

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[55]  "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[56]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[57]

Federal Rule of Evidence 403 permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403."[58]  New York employs a similar rule.[59]

Federal Rule of Evidence 404(b) generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character in order to show action in conformity with the extrinsic acts, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge.  No preliminary showing is necessary before such evidence may be introduced for a proper purpose.[60]  If offered for such a proper purpose, the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403.[61] The Second Circuit "has long adopted an inclusionary approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or acts is admissible for any

---

[55] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[56] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998).

[57] *Estelle*, 502 U.S. at 72 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

[58] *United States v. Abel,* 469 U.S. 45, 54 (1984).

[59] *People v. Scarola*, 525 N.E.2d 728, 732 (N.Y. 1988).

[60] *Huddleston v. United States*, 485 U.S. 681, 687–88 (1988).

[61] *Id.*, at 688.

purpose other than to show a defendant's criminal propensity."[62]  Considerable deference is accorded to a district court's decision to admit such evidence, and it is reversed only for abuse of discretion.[63]  In ruling on whether evidence is properly admitted under Rule 404(b) the court must consider whether:  (1) the prior acts evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court, if requested, administered an appropriate limiting instruction.[64]

Under the facts of this case, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[65]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro*, *i.e.*, the state court's decision was more than incorrect or erroneous; its application of clearly established law was objectively unreasonable.[66]  Brown is not entitled to relief under his second ground.[67]

Ground 3:  Compelled Disclosure of Inculpatory/Prejudicial Evidence.

Brown contends that his constitutional right to a fair trial was violated by the forced disclosure of inculpatory and prejudicial evidence.  Counsel for Brown attempted to impeach the victim by the use of a letter written by the victim to Brown while he was in jail awaiting trial on the charges upon which he was convicted.  The prosecutor demanded to see the letter, which,

---

[62] *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) (internal quotation marks and citations omitted).

[63] *Id.*

[64] *Huddleston*, 485 U.S. at 691–92.

[65] 28 U.S.C. § 2254(d).

[66] *Wiggins*, 539 U.S. at 520–21.

[67] Respondent contends this ground is unexhausted.  The Court need not reach this issue as it may deny the petition on the merits notwithstanding the failure to exhaust state court remedies.  28 U.S.C. § 2254(b)(2).

although it had not been admitted into evidence, was marked as a defense exhibit.  The trial court ordered that the letter be turned over to the prosecutor, who had it entered into evidence over the objection of the defense, and read the letter to the jury, also over the objection of the defense. The contents of the letter were more inculpatory than exculpatory.

Brown contends that admission of this letter impermissibly and involuntarily incriminated him in violation of his Fifth Amendment rights.  The Appellate Division summarily rejected Brown's argument in its catch-all:  "The remaining arguments have been considered and found unpersuasive."[68]  There being no reasoned decision on the merits, this Court assumes that the decision was decided on federal constitutional grounds, giving the assumed decision the same AEDPA deference that it would give a reasoned decision of the state court.[69]

It is inexplicable how the contents of a letter, written by the victim of a crime of violence, to the perpetrator could possibly contravene the defendant's right against self-incrimination. Nothing in the letter could be construed as being compelled "testimony" by Brown. Furthermore, under controlling precedent, as a private paper, the contents are not entitled to Fifth Amendment protection.[70]  The complaint that its compelled production violated the Fifth Amendment, however, stands on somewhat different footing.  Although it is recognized that, in some instances, a party may be protected by the Fifth Amendment from producing the evidence, the party is not protected from its production.[71]  Thus, the compelled production of private documents from an attorney does not implicate whatever Fifth Amendment right the person, in this case, Brown, might have.[72]  Brown, having failed to raise a constitutional issue cognizable in a federal habeas proceeding, is not entitled to relief under his third ground.

---

[68] *Brown*, 805 N.Y.S.2d at 174.

[69] *See Jimenez*, 458 F.3d at 145–46.

[70] *In re Grand Jury Subpoena Duces Tecum Dated October 29, 1972*, 1 F.3d 87, 90 (2d Cir. 1993).

[71] *See Fisher v. United States*, 425 U.S. 391, 398–400 (1976).

[72] *See id.* at 401.

Ground 4:  Prosecutorial Misconduct.

The trial court, in its *Molineux*/*Ventimiglia* ruling, ruled that although the charged but pending charges that Brown had assaulted the victim in March were admissible as background, "the prosecution should do that without undue emphasis" and that "to get the cops there or witnesses from the hospital or that charges were preferred or lodged is too much."  In her opening the prosecutor referred specifically to the fact that in both the March and July incidents the police were called.  Brown claims that these exceeded the trial court's *Molineux*/*Ventimiglia* ruling and that the limiting instruction given at that time was deficient in that it did not refer to the violation of the court's ruling.[73]

The second prosecutorial misconduct claim involves comments made by the prosecutor during closing argument.  Specifically, Brown objects to the comments that "he [defendant] had no explanation for how those scratches got on his face," "you didn't hear evidence that the defendasnt (*sic*) paid any bills," and "the defendant has five convictions, Miller has one . . . ask yourself who is laying (*sic*)."  Brown contends the first two statements tended to improperly shift the burden of proof to him, and the third statement improperly portrayed the trial as a "credibility match."

The Appellate Division summarily rejected Brown's argument in its catch-all:  "The remaining arguments have been considered and found unpersuasive."[74]  There being no reasoned decision, this Court assumes that the decision was decided on federal constitutional grounds, giving the assumed decision the same AEDPA deference that it would give a reasoned decision of the state court.[75]

"[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned."[76]  "The relevant question is whether the prosecutor's comments 'so infect[s] the

---

[73] The limiting instruction given is set forth in Note 52, *supra*, page 12.

[74] *Brown*, 805 N.Y.S.2d at 174.

[75] *See Jimenez*, 458 F.3d at 145–46.

[76] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations and internal quotation marks omitted).

trial with unfairness as to make the resulting conviction a denial of due process.'"[77]  It is through this lens that this Court must review the decision of the Appellate Division.

It does not appear from the record that, with respect to the comments made by the prosecutor in her opening statement, counsel requested that a limiting instruction addressing the perceived violations of the *Molineux/Ventimiglia* ruling.  The responsibility for enforcing its orders falls first to the trial court.  In this case, given the state of the record, this Court must assume that neither the Albany County Court, which presumably understood the scope of its own order, nor the Appellate Division viewed the comments by the prosecutor as violating the *Molineux/Ventimiglia* ruling.

As to the closing comments, the first (referring to the scratches on the cheek) was, as the Albany County Court noted, a comment on the state of the evidence in the record.  The Albany County Court sustained the objection to the second.  As to third, suffice it to say that a trial in which there is conflicting testimony is always a "credibility match."  Indeed, that the evidence of prior convictions was admitted under *Sandoval* because it tended to undermine Brown's credibility.  When Brown elected to testify, he placed his credibility at issue.  It would be incongruous to hold on the one hand that allowing the introduction of evidence of prior convictions is permissible to impeach a witness's credibility, yet, on the other hand, preclude the prosecution from commenting on that evidence to impeach the defendant's credibility.

Consequently, this Court cannot say that the assumed decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[78]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro*, *i.e.*, the state court's

---

[77] *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, [643] (1974)); *Jenkins v. Artuz*, 294 F.3d 284 (2d Cir. 2002).

[78] 28 U.S.C. § 2254(d).

decision was more than incorrect or erroneous; its application of clearly established law was objectively unreasonable.[79]  Brown is not entitled to relief under his fourth ground.[80]

    <u>Ground 5:  Jury Panel Challenge</u>.

    Prior to the start of jury selection, Brown challenged the entire panel of prospective jurors under New York Criminal Procedure Law § 270.10.[81]  The trial court denied Brown's challenge without conducting a hearing.  Brown contends that the failure of the trial court to conduct an evidentiary hearing violated § 270.10.  The Appellate Division rejected Brown's arguments, holding:

> Nor was it reversible error to reject the challenge to the racial and age composition of the jury panel without a hearing (citations omitted) and, moreover, the jury selected to sit on the case included four African Americans and one Hispanic (citations omitted).[82]

    Although not specifically articulated before either this Court or the Appellate Division, the Court assumes that the federal constitutional right alluded to by Brown is the Sixth Amendment right to a jury chosen from a panel that represents a fair cross-section of individuals

---

[79] *Wiggins*, 539 U.S. at 520–21.

[80] Respondent contends this ground is unexhausted.  The Court need not reach this issue as it may deny the petition on the merits notwithstanding the failure to exhaust state court remedies.  28 U.S.C. § 2254(b)(2).

[81] N.Y. Crim. Proc. Law § 270.10 provides:
1.  A challenge to the panel is an objection made to the entire panel of prospective trial jurors returned for the term and may be taken to such panel or to any additional panel that may be ordered by the court.  Such a challenge may be made only by the defendant and only on the ground that there has been such a departure from the requirements of the judiciary law in the drawing or return of the panel as to result in substantial prejudice to the defendant.
2.  A challenge to the panel must be made before the selection of the jury commences, and, if it is not, such challenge is deemed to have been waived.  Such challenge must be made in writing setting forth the facts constituting the ground of challenge.  If such facts are denied by the people, witnesses may be called and examined by either party.  All issues of fact and law arising on the challenge must be tried and determined by the court.  If a challenge to the panel is allowed, the court must discharge that panel and order another panel of prospective trial jurors returned for the term.

[82] *Brown*, 805 N.Y.S.2d at 174.

randomly selected from the community at large.[83]  In *Duren*[84] the Supreme Court clearly established that juries do not represent a fair cross-section of the community when the jury selection process systematically excludes a distinctive group of the jury-eligible population.[85]

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.[86]

To establish a Sixth Amendment cross-section requirement violation, evidence of systematic exclusion must be introduced.[87]  Brown introduced before the trial court what he contended was a timely and well researched article from a reputable newspaper of general circulation.   Accepting the article at face value, at most it shows that an absolute numerical disparity of minorities exists between the population base and jury panels in Albany County, perhaps satisfying the second prong of the *Duren* test.  What it does not show is that this disparity is the product of systematic exclusion of minorities.  Lacking in this case is any evidence of the process used in Albany County to select jury panels.  The mere fact that the method used, whatever it may have been, failed to achieve a proportionate balance between the population base and the jury panel is insufficient standing alone to establish systematic exclusion.[88]  Finally, and perhaps most importantly, because the jury composition included four African-Americans and one Hispanic, Brown cannot show any prejudice.

Consequently, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[83] *Taylor v. Louisiana*, 419 U.S. 522, 527–30 (1975).

[84] *Duren v. Mississippi*, 439 U.S. 357 (1979).

[85] *Id.* at 363–64.

[86] *Id.* at 364.

[87] *See United States v. Bullock*, 550 F.3d 247, 251–52 (2d Cir. 2008).

[88] *Id.*; *see also United States v. Joyner*, 201 F.3d 61, 75 (2d Cir. 2000) (the panel was drawn from a list compiled from the rolls of drivers and voters, a race-neutral approach to jury selection).

determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[89]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro*, *i.e.*, the state court's decision was more than incorrect or erroneous; its application of clearly established law was objectively unreasonable.[90]  Brown is not entitled to relief under his fifth ground.[91]

Ground 6:  Weight of the Evidence.

Brown argues that the verdict was "against the weight of the evidence."  Under New York law, the Appellate Division employs two related standards of review—legal sufficiency and weight of the evidence.[92]  Although related, each requires a discrete analysis.  Under the sufficiency of the evidence standard, the Appellate Division must determine whether there is a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury on the basis of evidence at trial.  Under the weight of the evidence standard, the court must examine the evidence further.  If based upon all the credible evidence a different finding would not have been unreasonable, the Appellate Division must, giving deference to the jury on credibility, weigh the relative probative force of the conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.[93]  In determining the weight of the evidence, the Appellate Division determines credibility issues; it must assess the evidence in light of the elements of the crime as charged to the jury.[94]  That is, the Appellate Division "must consider the elements of the crime, for even if

---

[89] 28 U.S.C. § 2254(d).

[90] *Wiggins*, 539 U.S. at 520–21.

[91] Respondent contends this ground is unexhausted.  The Court need not reach this issue as it may deny the petition on the merits notwithstanding the failure to exhaust state court remedies.  28 U.S.C. § 2254(b)(2).

[92] N.Y. Crim. Proc. Law § 470.15[4](b), [5].

[93] *People v. Bleakley*, 508 N.E.2d 672, 674–75 (N.Y. 1987).

[94] *People v. Johnson*, 890 N.E.2d 877, 879 (N.Y. 2008).

the prosecution's witnesses were credible their testimony must prove the elements of the crime beyond a reasonable doubt."[95]

A "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review.   In making a "weight of the evidence" argument, petitioner has not asserted a federal claim; instead, he has raised an error of state law, for which habeas review is not available.[96]  Brown is not entitled to relief under his sixth ground.[97]

Ground 7:  Insufficiency of the Evidence.

In rejecting Brown's contentions that the evidence was legally insufficient and the verdict was against the weight of the evidence, the Appellate Division held:

> We consider first defendant's argument that the verdict was not supported by legally sufficient evidence as to each crime, except assault in the second degree (which he concedes he committed).  A verdict is supported by legally sufficient evidence when "there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" and the proof establishes each element of the charged crime.  Here, the victim testified that she locked the doors after defendant left, she refused to grant him reentry and he kicked in two locked doors to gain entry.  Police investigation revealed a splintered doorjamb and hardware on the floor.  After forcing entry, defendant repeatedly struck and kicked the victim, leaving her with fractures, lacerations and bruises that were verified by medical proof.  According to the victim, defendant demanded sex and, when she refused, he disrobed her, got on top of her and penetrated her.  She stated that she scratched his face in an effort to get him to stop, and there was proof that defendant had scratches on his face and the victim's fingernail scraping contained defendant's DNA.  The victim testified that defendant threatened to kill her if she told anyone about the incident, pulled her back into the apartment when she tried to escape through a window and disconnected the phone to prevent her from summoning help.  While defendant contends that the burglary conviction is not

---

[95] *People v. Danielson*, 880 N.E.2d 1, 5 (N.Y. 2007).

[96] *Brown v. Gouverneur Correctional Facility*, 408 F. Supp. 2d 175, 183–84 (W.D.N.Y. 2006).

[97] Respondent contends this ground is unexhausted.  The Court need not reach this issue as it may deny the petition on the merits notwithstanding the failure to exhaust state court remedies.  28 U.S.C. § 2254(b)(2).

supported by proof of an intent to commit a crime therein at the time of entry, his intent can be "reasonably inferred" from his manner of entry.  Review of the record reveals that the elements of each of the crimes is supported by sufficient proof.

As to the weight of the evidence, since "a different finding would not have been unreasonable," we "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony."  Defendant testified that the doors were already broken and that he did not engage in sexual intercourse with the victim during the night the crimes allegedly occurred.  The medical evidence did not reveal that the victim suffered genital injuries, but the doctor who treated her testified that such injuries do not occur in all cases of forcible intercourse and it was not unusual not to have such injuries in a woman, such as the victim, who had delivered 11 children.  There was also evidence that, after entering the apartment, defendant did not immediately engage in further criminal conduct, but took the time to drink a beer.  Defendant further claimed that the victim had been drinking and using drugs throughout the day.  It is clear that varying versions of the germane events were provided at trial and credibility determinations were a key part of sorting through the proof.  After viewing the evidence in a neutral light and according due deference to the jury's opportunity to see the witnesses as they presented differing versions of events, we are unpersuaded that the verdict was against the weight of the evidence.[98]

Under *Jackson*,[99] the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[100]  This Court must, therefore, determine whether the decision of the Appellate Division on the merits unreasonably applied *Jackson*.

Brown misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[101]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must

---

[98] *Brown*, 805 N.Y.S.2d at 173–74.

[99] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[100] *Id.* at 319 (emphasis in the original).

[101] *See Engle*, 456 U.S. at 128.

MEMORANDUM DECISION
*Brown v. Walsh*, 9:06-cv-01130-JKS                23

undertake its inquiry by reference to the elements of the crime as set forth in state law.[102]   Unlike the Appellate Division under the New York "weight of the evidence" rule, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is simply to determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law.[103] That such evidence exists is clearly established by the record in this case.  Brown bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous.  Brown has failed to carry his burden.

Here, the Appellate Division, a state court, found that the weight of the evidence supported conviction of the crimes under the New York statutes.  Even if it were an erroneous interpretation of New York law, it is not sufficiently egregious to constitute a denial of due process.[104]

The Appellate Division has determined that the evidence met the more stringent New York weight of the evidence test.  Therefore, it cannot be said that the evidence does not also meet the sufficiency of the evidence test under *Jackson*.  Brown is not entitled to relief under his seventh ground.[105]

Ground 8:  Sentence was Harsh and Severe.

Brown argues that the sentence imposed, although legal,  was unduly harsh and severe under the circumstances.  The Appellate Division rejected Brown's position, holding:

In light of defendant's long criminal record and the nature of the crimes of which he was convicted, we find that the sentence imposed—slightly less than the

---

[102] *Jackson*, 443 U.S. at 324 n.16.

[103] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

[104] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[105] Respondent contends this ground is unexhausted.  The Court need not reach this issue as it may deny the petition on the merits notwithstanding the failure to exhaust state court remedies.  28 U.S.C. § 2254(b)(2).

maximum permissible—was neither unduly harsh nor an abuse of the sentencing court's discretion.[106]

No federal constitutional issue is presented when the sentence imposed by a state court is within the range allowed by state law.[107]  Consequently, Brown is not entitled to relief under his eighth ground.

V.  CONCLUSION AND ORDER

Brown is not entitled to relief on any ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[108]  To the extent the issues raised in the petition were addressed by the Appellate Division, Third Department, no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court is to enter final judgment accordingly.

Dated:  September 28, 2009.

                                    /s/ James K. Singleton, Jr.
                                    JAMES K. SINGLETON, JR.
                                    United States District Judge

---

[106] *Brown*, 805 N.Y.S.2d at 174.

[107] *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).

[108] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).